PT:MMS:MEC
F. #2013R00281

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – –X

UNITED STATES OF AMERICA

    - against -

BRADLEY NIERENBERG,

             Defendant.

– – – – – – – – – – – – – –X

**I N F O R M A T I O N**

Cr. No. <u>14-510 (NGG)</u>
(T. 18, U.S.C., §§ 371 and 3551 <u>et</u> <u>seq</u>.)

THE UNITED STATES ATTORNEY CHARGES:

<u>INTRODUCTION</u>

    At all times relevant to this Information, unless otherwise indicated:

I.   <u>Background</u>

    1.    The Army National Guard ("National Guard") used federal funds for marketing and advertising to recruit new soldiers.   As part of these recruitment efforts, the National Guard provided sponsorship monies to businesses to promote the National Guard at various events.

II.   <u>The Conspiracy</u>

    2.    The defendant BRADLEY NIERENBERG was the owner of RedPeg Marketing, Inc., ("RedPeg") a marketing and advertising company based in Alexandria, Virginia.

2

3.   Officer Doe, an individual whose identity is known to the United States Attorney, was an officer in the National Guard who, along with other public officials, handled marketing and advertising for the National Guard.   John Doe, an individual whose identity is known to the United States Attorney, was a relative of Officer Doe.   John Doe suffered financial difficulties and received financial support from Officer Doe.

4.   In his official capacity, Officer Doe had the authority to reject sponsorship proposals submitted to the National Guard and exercised substantial influence in the awarding of sponsorship agreements by the National Guard to private businesses.   Because Officer Doe could substantially influence the awarding of sponsorship agreements by the National Guard, the defendant BRADLEY NIERENBERG provided things of value to John Doe.   Officer Doe used his substantial influence over sponsorship agreements to ensure that the National Guard awarded sponsorship agreements worth several million dollars to NIERENBERG and RedPeg.

III.   The Fraudulent Scheme

5.   In or about 2006, at the urging of Officer Doe, the defendant BRADLEY NIERNEBERG hired John Doe as a paid "consultant" to help NIERENBERG induce the National Guard to award sponsorship agreements to RedPeg.   NIERENBERG and RedPeg had never solicited National Guard business before 2006.   NIERENBERG agreed with Officer Doe and John Doe to pay John Doe a percentage of any contracts that the National Guard awarded to RedPeg.

6.     Officer Doe guided and assisted the defendant BRADLEY
NIERENBERG and John Doe in crafting a proposal for RedPeg relating to a particular
marketing effort (Proposal #1) in order to ensure that Proposal #1 was approved by the
National Guard.   When Proposal #1 was completed, NIERENBERG gave it to Officer Doe to
submit to his superiors at the National Guard.   Acting in his official capacity, Officer Doe
subsequently introduced Proposal #1 to the National Guard and championed it to his superiors.

7.     Officer Doe never disclosed to his National Guard superiors that John
Doe had a financial interest in Proposal #1 or that Officer Doe had assisted the defendant
BRADLEY NIERENBERG and John Doe in drafting Proposal #1.   The National Guard
eventually awarded RedPeg a contract for Proposal #1 worth approximately $1 million.   John
Doe was paid by RedPeg for his successful work as a "consultant" on Proposal #1.
Thereafter, NIERENBERG and John Doe worked on additional proposals, including a
proposal similar to Proposal #1 valued at approximately $2.3 million (Proposal #2) and a
marketing contract awarded by the National Guard to RedPeg and valued at approximately
$2.2 million (Proposal #3).   Officer Doe supported both Proposal #2 and Proposal #3, and the
National Guard also awarded those contracts to NIERENBERG and RedPeg.

8.     RedPeg and the defendant BRADLEY NIERENBEG paid John Doe by
corporate check for his work on these National Guard proposals.   With the knowledge and
approval of NIERENBERG, John Doe submitted invoices to RedPeg falsely claiming that
John Doe had performed work as a "consultant" for other RedPeg clients, and not on Proposals

# 1, 2 and 3, in order to disguise the fact that he had worked on National Guard proposals over which Officer Doe had exercised his influence.   NIERENBERG paid nearly $295,000 in total to John Doe for his work as a "consultant."

9.   In or about 2007, Officer Doe temporarily left the National Guard and the defendant BRADLEY NIERENBERG stopped "collaborating" with John Doe on the proposals RedPeg submitted to the National Guard.   At that time, NIERENBERG also stopped making "consulting" payments to John Doe.   In or about 2009, when Officer Doe returned to service in the National Guard, NIERENBERG, Officer Doe and John Doe agreed that NIERENBERG would resume making payments to John Doe, even though John Doe was no longer collaborating on National Guard contracts with RedPeg.   Between 2009 and 2012, during the period after John Doe had ceased working on National Guard contracts and even though John Doe did no work on National Guard contracts, NIERENBERG paid John Doe a total of approximately $30,000 in cash.

## CONSPIRACY TO DEFRAUD THE UNITED STATES

10.    The allegations contained in paragraphs 1 through 9 are realleged and incorporated as though fully set forth in this paragraph.

11.    In or about and between 2006 and 2012, both dates being approximate and inclusive, within the Eastern District of Virginia, the defendant BRADLEY NIERENBERG, together with others, did knowingly and intentionally conspire to defraud the United States and an agency thereof, to wit: the National Guard, by impeding, impairing and obstructing the National Guard's contracting process with respect to reviewing sponsorship proposals and awarding sponsorship agreements to private businesses.

12.   In furtherance of the conspiracy and to effect its objects, within the Eastern District of Virginia and elsewhere, the defendant BRADLEY NIERENBERG, together with Officer Doe, John Doe and others, committed and caused to be committed, among others, the following:

OVERT ACTS

a.   On or about August 15, 2011, in Alexandria, Virginia, BRADLEY NIERENBERG gave approximately $9,340 in cash to John Doe.

b.   On or about September 15, 2011, in Alexandria, Virginia, BRADLEY NIERENBERG gave approximately $5,000 in cash to John Doe.

c.   On or about September 24, 2011, in Alexandria, Virginia, BRADLEY NIERENBERG gave approximately $3,000 in cash to John Doe.

d.   On or about December 22, 2011, in Alexandria, Virginia, BRADLEY NIERENBERG gave approximately $5,000 in cash to John Doe.

e.   On or about February 17, 2012, in Alexandria, Virginia, BRADLEY NIERENBERG gave approximately $10,000 in cash to John Doe.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F. #20__R___
FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT

### EASTERN *District of* NEW YORK

### CRIMINAL DIVISION

### THE UNITED STATES OF AMERICA

*vs.*

*BRADLEY NIERENBERG,*

Defendant.

# INFORMATION

(T. 18, U.S.C., §§ 371and 3551 et seq.)

*A true bill.*

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
*Foreperson*

*Filed in open court this* _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ *day,*

*of* _ _ _ _ _ _ _ _ _ _ _ _ *A.D. 20* _ _ _ _ _

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
*Clerk*

*Bail, $* _ _ _ _ _ _ _ _ _ _ _

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
*Marisa Seifan, Martin Coffey, Assistant U.S. Attorneys 254-6008,6157*